Filed 2/19/21  P. v. Love CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>THADDEUS LOVE,<br><br>    Defendant and Appellant. | B301936<br><br>Los Angeles County<br>Super. Ct. No. BA366923 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Sam Ohta, Judge. Affirmed and remanded with directions.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Defendant Thaddeus Love was sentenced to 104 years to life for aiding and abetting several dozen armed robberies. On appeal, he argues that during jury selection, the prosecutor unconstitutionally discriminated on the basis of sex by striking women from the jury. He also asks us to strike his prison priors and restitution fine. We order the trial court to correct a clerical error in the sentencing minute order and abstract of judgment, and otherwise affirm.

## PROCEDURAL BACKGROUND[1]

By amended information filed August 4, 2011, defendant was charged with 26 counts of robbery (Pen. Code,[2] § 211; counts 6–13, 16, 18, 20, 22, 24–30, 34–40), one count of false imprisonment by violence (§ 236; count 14), and six counts of use of tear gas (§ 12403.7, subd. (g); counts 15, 17, 19, 21, 23, 41).[3] As to all counts, the information alleged that a principal was armed with a firearm (§ 12022, subd. (a)(1)). Finally, the information alleged that defendant had been convicted of five strikes in 1999 (§§ 1170.12, subds. (a)–(d), 677, subds. (b)–(i)), two of which were also serious-felony priors (§ 667, subd. (a)) and prison priors (§ 667.5, subd. (b)), and that he had been convicted of two

---

[1] Because the facts of this case are irrelevant to the issues raised on appeal, we do not address them.

[2] All undesignated statutory references are to the Penal Code.

[3] The court later granted the prosecution's motion to amend count 10 to attempted robbery (§ 664/211) to conform to proof and to dismiss counts 24 and 40.

additional prison priors in 1998 and 1999 (§ 667.5, subd. (b)). Defendant pled not guilty and denied the allegations.

After a jury trial at which he did not testify, defendant was found not guilty of counts 10–13, 20, and 21, but guilty of counts 6–9, 14–19, 22–23, 25–29, 34–39, and 41. The jury found the firearm allegations true. After a bifurcated court trial, the court found the prior-conviction allegations true.

The court denied defendant's motion to strike his prior convictions under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, and sentenced him to an aggregate indeterminate term of 104 years to life. The court sentenced defendant to 26 years to life for counts 6, 8, 16, and 25—third-strike terms of 25 years to life, plus one year for the firearm enhancement—to run consecutively to his sentence in case No. BA391059 and each other. The court imposed the same sentence for counts 7, 9, 18, 22, 26–29, and 34–39, to run concurrently. For counts 14, 15, 17, 19, 23, and 41, the court imposed a determinate term of seven years—the upper term of three years, doubled for the prior strike, plus one year for the firearm enhancement—to run concurrently.

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant contends that during jury selection, the prosecutor unconstitutionally discriminated on the basis of sex and that at sentencing, the court erred by imposing a $2,000 restitution fine without considering his ability to pay and by staying, rather than striking, enhancements for his prison priors.

3

1.    **The *Batson/Wheeler* motion was properly denied.**

Defendant contends the prosecutor unconstitutionally discriminated against prospective jurors on the basis of sex. We disagree.

### 1.1.   Legal Principles and Standard of Review

Both the state and federal constitutions bar lawyers from striking prospective jurors based on their membership in cognizable protected groups. (*People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*); *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*).) As relevant here, sex is a protected classification. (*People v. Crittenden* (1994) 9 Cal.4th 83, 115–116 [women].)

"When a party raises a claim that an opponent has improperly discriminated in the exercise of peremptory challenges, the court and counsel must follow a three-step process. First, the *Batson/Wheeler* movant must demonstrate a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. … [¶] Second, if the court finds the movant meets the threshold for demonstrating a prima facie case, the burden shifts to the opponent of the motion to give an adequate nondiscriminatory explanation for the challenges." (*People v. Gutierrez* (2017) 2 Cal.5th 1150, 1158.)

Once the prosecutor establishes a gender-neutral justification for striking a prospective juror, the court must make a " 'sincere and reasoned attempt' " to evaluate the credibility of the explanation. (*People v. Gutierrez, supra*, 2 Cal.5th at p. 1159.) "This [third step] of the *Batson/Wheeler* inquiry focuses on the subjective genuineness of the reason, not the objective reasonableness." (*Id.* at p. 1158.) "[W]hen it is not self-evident

why an advocate would harbor a concern [about a particular juror], the question of whether a neutral explanation is genuine and made in good faith becomes more pressing. That is particularly so when, as here, an advocate uses a considerable number of challenges to exclude a large proportion of members of a cognizable group." (*Id*. at p. 1171.) Thus, "a truly 'reasoned attempt' to evaluate the prosecutor's explanations [citation] requires the court to … determine not only that a valid reason existed but also that the reason actually prompted the prosecutor's exercise of the particular peremptory challenge." (*People v. Fuentes* (1991) 54 Cal.3d 707, 720.)

As long as the court "has made a sincere and reasoned attempt to evaluate each stated reason as applied to each challenged juror," we accord great deference to its ruling that a particular reason is genuine. (*People v. Silva* (2001) 25 Cal.4th 345, 385–386.) Thus, on appeal, we presume that a prosecutor "uses peremptory challenges in a constitutional manner, and defer to the trial court's ability 'to distinguish bona fide reasons for such peremptories from sham excuses belatedly contrived to avoid admitting acts of group discrimination.' (*Wheeler*, *supra*, 22 Cal.3d at p. 282.)" (*People v. Lenix* (2008) 44 Cal.4th 602, 626.) "Under our deferential standard, we consider whether substantial evidence supports the trial court's conclusions. [Citation.] Evidence is substantial if it is reasonable, credible and of solid value. [Citations.]" (*Id*. at p. 627.)

### 1.2. Substantial evidence supports the prosecutor's proffered reasons for excusing Juror No. 10.

During jury selection in this case, the prosecutor used peremptory challenges to excuse seven female jurors in a row. The defense objected on *Batson/Wheeler* grounds, and the court

5

found defendant made a prima facie showing of discriminatory purpose for five of them: Prospective Juror Nos. 7, 10, 12, 14, and 39. After inquiring into the prosecutor's reasons for striking these prospective jurors, the court accepted the prosecutor's gender-neutral explanations as genuine and found no purposeful discrimination. The court also noted that at least five women remained on the panel. On appeal, defendant challenges the court's ruling only as to Juror No. 10.

Juror No. 10 was an Asian woman in her late 20s. She worked as an administrative services manager in the human resources office of the County Assessor. Juror No. 10 was single and had a happy disposition. The prosecutor explained: "I got rid of her because she's young. She is unmarried. I prefer jurors who have more life experience. … I'm looking for jurors that are going to be able—particularly as to Mr. Love—to make practical inferences about how people operate … . So I think that would be the sort of decision that a more mature individual, somebody that owns property, somebody who is married, somebody who has more life experience. That's what I'm looking for, so that's why I excused Juror No. 10."

The court agreed that Juror No. 10 appeared youthful—indeed, this was the prosecutor's rationale for excusing several other jurors—but was not persuaded that youth necessarily correlated with inexperience. The prosecutor explained that such an inference made sense here because: "I'm basing it on the fact she's very youthful. The job she described does not appear, based upon what limited description she gave, to be a job that has given her much maturity. She doesn't seem to be making important decisions. I don't think she's reached that level within her

capacity at the Assessor's Office. I'm basing that on youth more than anything … ."

The prosecutor went on, "I work in the county. I know that when you reach a position of management, when you reach a position where you're making decisions—important decisions—then you're generally much older. You have seniority. There is simply no way somebody at her age is working in a capacity where she's making important decisions on a day-to-day basis. It's just—it is, in my judgment, inconceivable that someone at that age could be doing that within the county structure."

Finally, the prosecutor noted—and the court confirmed—that Juror No. 10 appeared "very happy. She has a smile on her face … that is almost constant." He explained, "that's not something that I like in jurors. It's a very serious case, and [defense counsel] has a good personality. He's good at getting laughter from the jurors. I prefer serious people that have to go back to work."

The court also conducted a comparative juror analysis between Juror No. 10 and Juror No. 15, a male juror the prosecutor kept. Juror No. 15 was a single, Latino, 20-year-old produce clerk. Though the prosecutor acknowledged Juror No. 15's youth and seeming lack of life experience, he explained he kept him because Juror No. 15 "wants to get out of here." Unlike the other prospective jurors, all of whom were being paid for an unlimited number of days of jury service, Juror No. 15 was "not getting paid. He's going to want to go back to work, and this isn't some sort of vacation for him, so that's a unique status that only he has out of all these jurors. … He needs to go back to work. He's going to try to work efficiently, I think, to reach a verdict as quickly as possible."

The court asked follow-up questions about this comparison and confirmed that Juror No. 15 had indicated to the bailiff that he had time constraints. The prosecutor explained that a single produce clerk was likely to be living paycheck to paycheck and to have bills to pay: "I like individuals that have to go back to work. I don't want an individual that's just going to want to come back for deliberations every day and hang my jury. I want somebody that has to make money." Why? Because "when the jury reaches a consensus, I think that sort of mentality, that sort of person is more likely to go along with the herd … ."

Juror No. 15's need to pay his bills overcame, for the prosecutor, his relative youth and inexperience "because nothing trumps the need to pay your bills. Nothing trumps the fact that we're going to be in trial for two weeks. He's not going to be getting paid for two weeks. It's going to be a hardship for him. … So if I have a juror that I know is in a situation where he needs to get back to work to get paid, then I'm confident this juror is not going to hang my jury." Juror No. 10, by contrast, worked for the county, and would be paid for an unlimited number of days of jury service.

The prosecutor also explained that Juror No. 15 appeared "weaker" than Juror No. 10: He seemed to have "a weaker personality set that would go along with the jury."

Ultimately, the court held that the prosecutor's "justification as to [Juror No. 10's] youthful appearance is supported by the record and is inherently plausible. As to the second reason, that the juror lacks life experience, while the mere fact of youthfulness is not a clear barometer for lacking life experience, the view that those who are county employees with less years on the job hold positions of less responsibility is not an

illogical conclusion. I do not think this view expressed by [the prosecutor] is pretextual. I find the justification subjectively genuine."

It is apparent that the court in this case "made a sincere and reasoned attempt to evaluate each stated reason as applied to each challenged juror." (*People v. Silva, supra,* 25 Cal.4th at pp. 385–386.) We have reviewed the record and conclude that as to both the individual and comparative analysis of Juror No. 10, substantial evidence supports the court's conclusion that the prosecutor's gender-neutral reasons were genuine.

## 2. Defendant forfeited his challenge to the restitution fine by failing to object.

At sentencing, the trial court imposed a $2,000 restitution fine (§ 1202.4, subd. (b)) and imposed and struck a $30 court facilities assessment (Gov. Code, § 70373) and $40 court security fee (§ 1465.8). Citing *Dueñas*, in which our colleagues in Division Seven held that the restitution fine and court fees may not be imposed on a defendant who lacks the ability to pay them, defendant asks us to strike the restitution fine. (See *People v. Dueñas* (2019) 30 Cal.App.5th 1157.) Because *Dueñas* became final before he was sentenced in this case, we conclude defendant has forfeited this claim by failing to object below. (See *People v. Aguilar* (2015) 60 Cal.4th 862.)

## 3. The sentencing minute order and abstract of judgment must be corrected.

Defendant contends—and the People concede—that the sentences for defendant's prison priors must be stricken, not stayed. Our review of the record reveals that defendant was properly sentenced, however; the problem is that the sentencing

9

minute order does not accurately reflect that sentence. As such, we direct the court to correct it.

In a criminal case, the oral pronouncement of a sentence constitutes the judgment. (*People v. Mesa* (1975) 14 Cal.3d 466, 471.) "An abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185; *Mesa*, at p. 471 [to the extent a minute order diverges from the sentencing proceedings it purports to memorialize, it is presumed to be the product of clerical error].) Accordingly, courts may correct clerical errors at any time, and appellate courts may order correction of a minute order or abstract of judgment that does not accurately reflect the oral pronouncement of sentence. (*Mitchell*, at pp. 185–188.)

For counts 14, 15, 17, 19, 23, and 41, the court sentenced defendant to seven years—the high term of three years, doubled for the prior strike, plus one year for the firearm enhancement. But instead of correctly stating that the court added one year for the firearm enhancement under section 12022, subdivision (a), the sentencing minute order incorrectly states that the court added one year for a prison prior under section 667.5, subdivision (b). Indeed, not only does the minute order not match the oral pronouncement of judgment, but it also misstates the number of prison priors—four were alleged, not six.

As such, we direct the court to correct the sentencing minute order and the abstract of judgment to reflect the sentence actually imposed.

10

## DISPOSITION

The judgment is affirmed. Upon remand, the trial court is directed to correct the abstract of judgment and the minute order of October 18, 2019, to delete references to section 667.5, subdivision (b), as explained in section three of the discussion, and to send a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.

11